UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60184-CR-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**PETER EDWIN STUYVESANT**,

    *Defendant*.

_____/

## **ORDER**

The Defendant has filed a Motion for Reduction in Sentence and for Compassionate Medical Release (the "Motion") [ECF No. 193]. The Government opposes the Motion and has filed its response (the "Response") [ECF No. 197]. Having carefully considered the Motion, the record, and the governing law, the Court now **DENIES** the Motion.

## **THE FACTS**

The Defendant, Peter Edwin Stuyvesant, is 65 years old. *See* Aug. 27, 2019 BOP Clinical Encounter – Admin. Note [ECF No. 197-3] (listing date of birth as "05/15/1954"). In 1991, he was convicted of, and imprisoned for, conspiring to possess with the intent to distribute—and attempting to possess with the intent to distribute—one-thousand kilograms or more of marijuana. *See* Resp. at 7.

Two years later, while he was still in the custody of the Federal Bureau of Prisons (the "BOP"), the Defendant was exposed to Hepatitis C. *See* Mot. at 4. In 2001, this Hep-C exposure led to more serious liver complications. *See id.*; *see also* Second Addendum to the Presentence Report [ECF No. 193-1 12–13] at 13 (noting that the "defendant has been medically disabled since

2001"). At some point between 2001 and 2006, these complications progressed to Stage IV liver cirrhosis. *See* Aug. 24, 2009 B. Rudd, M.D., Letter [ECF No. 193-2 at 16–17] at 16 ("End stage liver disease/severe cirrhosis"); Apr. 17, 2007 G. Tsoulfas, M.D., Letter [ECF No. 193-3 at 5–6] at 6 ("Overall, Mr. Stuyvesant is a 52-year-old gentleman with end-stage liver disease secondary to hepatitis C and significant symptoms.").

From prison, the Defendant filed two lawsuits to remedy what he perceived as inadequate medical care. *See generally Stuyvesant v. United States*, 2007 WL 1931292 (D.N.J. June 29, 2007); *Stuyvesant v. Fed. Bureau of Prisons*, 2006 WL 1097452 (D.N.J. Mar. 31, 2006). Both lawsuits failed. But, in adjudicating one of those lawsuits—a § 2241 habeas petition—Judge Kugler of the United States District Court for the District of New Jersey opined that "Stuyvesant suffers from a terminal liver condition, namely, Hepatitis C and end stage liver cirrhosis." *Stuyvesant*, 2006 WL 1097452, at *1 n.2. On August 10, 2006, the Defendant completed his sentence and was released from federal prison. *See* Sentence Monitoring Computation Data [ECF No. 193-1 at 20–23] at 22.

On January 2, 2009, while he was receiving care for his various medical conditions, the Defendant was placed on the liver transplant list at Strong Memorial Hospital. *See* Jan. 5, 2009 P. Milot, R.N., Letter [ECF No. 193-3 at 7] at 7 ("This letter is to inform you that your medical and surgical evaluation is complete and you were listed on 1/2/2009 as a liver transplant candidate at Strong Memorial Hospital."). Unfortunately, just a few months later—and before he could receive the transplant—the Defendant committed a new series of federal crimes, for which he was arrested on July 8, 2009. *See* Criminal Complaint [ECF No. 1]. On April 5, 2010, after a trial, a federal jury found him guilty of conspiring to possess, and actually possessing, with the intent to distribute five kilograms or more of cocaine. *See* Verdict [ECF No. 122]. When the verdict came down, the

Defendant was still on Strong Memorial Hospital's organ transplant list. *See* Motion for Medical Treatment [ECF No. 129] ¶ 3.

On July 18, 2010, Judge William Zloch of the United States District Court for the Southern District of Florida sentenced the Defendant to 240 months in prison—to be followed by 120 months of supervised release. *See* Judgment [ECF No. 137]. As part of that sentence, Judge Zloch recommended that the Defendant be housed in a "Federal facility capable of treating the defendant's medical conditions, including a liver transplant." *Id.* at 2.[1]

On August 2, 2019, the Defendant filed this Motion, in which he details the twenty-two medical conditions that, he says, entitle him to a sentencing reduction.[2] As of this writing, the Defendant's sentence is set to expire on March 26, 2030, which means that he has served over ten years—or more than 50%—of his sentence. *See* Sentence Monitoring Computation Data [ECF No. 193-1 at 20–23] at 21. But, because of certain credits he is set to receive, the Defendant's expected statutory release date is August 28, 2027. *See id.*

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a]

---

[1] At some point after Judge Zloch took senior status, this case was transferred to the Undersigned.
[2] In no particular order, these are: Hepatitis C Exposure, Congestive Heart Failure, Stage IV liver cirrhosis, Gall Bladder Dysfunction, Thickening of the Esophageal Walls, Splenomegaly, Portal Hypertension, Severe Esophageal and Upper-Stomach Varices, Pleural Lung Effusions, Interstitial Lung Disease, Chronic Aspiration, Ascites and Edema, Esophageal Reflux, Thrombocytopenia, Coagulopathy, Benign Prostatic Hypertrophy of the Prostate, Left Testicular Damage, Umbilical Hernia, Hepatic Encephalopathy, Severe Chronic Fatigue Syndrome, Chronic Peripheral Vasodilation, and the need for a liver transplant. *See* Mot. at 4–5.

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Court will discuss each of these four steps in turn.

### I. Exhaustion of Administrative Rights to Appeal

The Defendant argues that his "request is timely filed based upon the First Step Act's criteria" because more than 30 days have passed since he sent his request for a reduction to Warden Smith at LSCI Butner. Mot. at 1. In support, the Defendant has submitted a USPS tracking receipt, which shows that the Warden received his request on June 3, 2019. *See* 2019 Reduction in Sentence Request [ECF No. 193-1 at 3–5] at 3. According to the Defendant, by July 31, 2019, he still had received no response to this request. *See* Mot. at 1.

Apparently conceding the point, the Government has attached a copy of the Warden's return communication, which was dated July 8, 2019—or more than 30 days after the Defendant's request was delivered to the Warden. *See* July 8, 2019 Compassionate Release Letter [ECF No. 197-2].[3] According to the Government, the Defendant's request was first reviewed by Kelsey Wehr, a clinical social worker at the prison's medical center. *See* Resp. at 5. The request was then forwarded to Dr. Sara Beyer, the Complex Clinical Director, who concluded that, from what she saw "on his chart[,] he would not qualify at this time." *See* July 8, 2019 Sara Beyer Email [ECF No. 197-1]. Finally, on August 27, 2019, the Defendant's request was reviewed by Dr. Michael

---

[3] That communication denied the Defendant's request. *See id*.

4

Valdez, who determined that "RIS terminal condition reviewed and he does not have a known disease process that will provide a predictable life expectancy of less than 18 months; therefore he does not meet RIS criteria for terminal condition." Aug. 27, 2019 Clinical Encounter – Admin. Note [ECF No. 197-3].[4]

Because, in short, the Government took more than 30 days to respond to the Defendant's request, the Defendant's Motion is timely.

## II.     18 U.S.C. § 3553

After considering the relevant § 3553 factors, Judge Zloch sentenced the Defendant to 240 months in prison. *See* Judgment. On appeal, the Defendant "challenge[d] the district court's denial of his downward departure motion," which he had filed because of "his chronic hepatitis C, his end-stage liver disease, and his urgent need for a liver transplant." *United States v. Stuyvesant*, 470 F. App'x 871, 872 (11th Cir. 2012). The Defendant "concede[d], however, that—absent such a departure—he is subject to a 20-year statutory mandatory minimum sentence." *Id.* at 3. The Eleventh Circuit affirmed Judge Zloch's sentence. *See id.* at 4.

In his Motion, the Defendant does not challenge Judge Zloch's application of the § 3553 factors, and this Court sees no reason to disturb Judge Zloch's findings—which, after all, were affirmed on appeal. Thus, to the extent they are applicable, the § 3553 factors counsel against a reduction.

## III.     18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court

---

[4] Dr. Valdez's evaluation was a simple "chart review" that did not factor into the decision to deny the Defendant's request. Resp. at 6.

to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582.

Because the Defendant is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. §

994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant.**

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    **(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following

factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see*

*also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The Defendant can satisfy the "Medical Condition of the Defendant" test by meeting one of two elements. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). Because the Defendant arguably meets the first (or "terminal illness") element, the Court need not address the second.

The voluminous medical records the Defendant has appended to his Motion suggest that he is suffering from end-stage liver disease, which may well constitute a "terminal illness."[5] The Government disputes this proposition. Relying on the BOP's Program Statement, the Government argues that the Defendant is not "suffering from a terminal illness." *See* Resp. at 5 (citing Resp. Ex. 3). According to the Program Statement, "RIS consideration may be given to inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1)." BOP Program Statement 5050.50(3)(a).[6] Because the Defendant does not have an

---

[5] By contrast, the Defendant fails to satisfy the "Age of the Defendant" prong of the test. While he is both (i) 65 years old, and (iii) has served at least 10 years of his sentence, he has not shown that he "(ii) is experiencing a serious deterioration in physical and mental health because of *the aging process*." U.S.S.G. § 1B1.13 cmt n.1(1)(B) (emphasis added). Instead, the Defendant's Affidavit and his medical records indicate that his condition has been deteriorating, not because of the "aging process," but because of his medical illnesses. *See* Aff. of Peter Stuyvesant at 22 (describing his deterioration); Mot. App. E. This failure does not end our inquiry, however, because the Guidelines are clear that "extraordinary and compelling reasons exist under *any* of the circumstances" set out in § 1B1.13 cmt n.1 (emphasis added).

[6] Available at https://www.bop.gov/policy/ progstat/5050_050_EN.pdf.

end-of-life trajectory of "18 months or less," the Government says, his condition does not qualify as "terminal." But that 18-month cutoff—probative though it may be—is not *dispositive* because the Guidelines make clear that "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). Instead, a defendant need only show that he is "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." *Id.*

Notably, the relevant Guidelines provision specifically defines a "terminal illness" as including "end-stage organ disease." *Id*. Moreover, after reviewing the Defendant's medical records, at least two doctors have characterized his liver condition as either "end-stage" or "incurable." *See* Aug. 24, 2009 B. Rudd, M.D., Letter [ECF No. 193-2 at 16–17] at 16 ("End stage liver disease/severe cirrhosis"); Feb. 26, 2014 Nwude, M.D., Letter [ECF No. 193-2 at 18] at 18 ("[H]is liver cirrhosis is an incurable and progressive illness."). And at least two federal judges have likewise described his liver condition as either "end-stage" or "terminal." *United States v. Stuyvesant*, 470 F. App'x 871, 872 (11th Cir. 2012) (noting "his chronic hepatitis C, his end-stage liver disease, and his urgent need for a liver transplant"); *Stuyvesant*, 2006 WL 1097452, at *1 n.2 ("Stuyvesant suffers from a terminal liver condition, namely, Hepatitis C and end stage liver cirrhosis.").

Neither court, to be sure, held (conclusively) that the Defendant's illness was, in fact, terminal. To the contrary, both simply took him at his word and went on to deny him relief on other grounds. Notably, too, while the Guidelines do not require a "specific prognosis of life expectancy," they do contemplate "an end of life trajectory." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). So, while a defendant need not show that he will perish from his condition within a *specific period* of time, he must still show that he will perish from the condition at *some* time. And, because the

Defendant has been living with this very same disease since (at least) 2006, the question is not as simple as it might, at first glance, appear. Normally, the Court would hold an evidentiary hearing to determine whether the Defendant's cirrhosis qualifies as a "terminal condition"—that is, whether his disease includes an "end of life trajectory." But this additional inquest would be unnecessary here because, as discussed below, the Defendant cannot show that he is no longer a danger to his community. For purposes of this Motion, then, the Court will simply assume that the Defendant has satisfied the terminal illness prong of the "extraordinary and compelling reasons" test.

### IV. 18 U.S.C. § 3142

Nevertheless, the Defendant's Motion must be denied because he has failed to show that he no longer poses a danger to his community. As the relevant Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

As a threshold matter, the Defendant has not even attempted to show that he represents no such danger. *See generally* Mot. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). For this reason alone, the Defendant's Motion must be denied.

In any event, the Defendant cannot establish that he is no longer a danger. In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . ., including whether the offense . . . involves . . . a controlled substance; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person,

including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Each of these factors weighs heavily against the Defendant here.

*First*, "the offense" of conviction involved a conspiracy to possess with the intent to distribute five kilograms or more of cocaine; it thus "involves . . . a controlled substance."

*Second*, the evidence against the Defendant was strong. In fact, after reviewing that evidence, a federal jury of his peers convicted him on both counts in the Indictment.

*Third*, the Defendant is a repeat drug offender. He was first exposed to Hepatitis C in 1993—while he was incarcerated for committing a separate drug offense. *See* Mot. at 4. But neither this exposure nor the many medical complications that ensued deterred him from committing other crimes. To the contrary, although he was released from federal prison in 2006, and despite his end-stage liver cirrhosis, *see id.*, he went on to commit, just three years later, the serious drug offense for which he is now incarcerated. The Defendant's suggestion that his liver cirrhosis entitles him to early release thus ignores the fact that he suffered from *this very same* condition when he committed the crime for which he now seeks release. The Court cannot agree that a defendant who is physically and mentally well enough to commit a serious federal crime is somehow not well enough to serve the sentence to which that crime inevitably exposes him.

What's worse, the Defendant was placed on the liver transplant list—to get the very liver transplant he now says he needs—on January 2, 2009. *See* Jan. 5, 2009 P. Milot, R.N., Letter [ECF No. 193-3 at 7] at 7 ("This letter is to inform you that your medical and surgical evaluation is complete and you were listed on 1/2/2009 as a liver transplant candidate at Strong Memorial Hospital."). But he did not get that transplant in large part because he got himself arrested just five months later. In other words, while he was awaiting a liver transplant that, he claims, is necessary

to save his life, he made the conscious decision to participate in a conspiracy to distribute five or more kilograms of cocaine—for which he was then arrested, convicted, and sentenced.

*Fourth*, the Defendant does not—and cannot—show that his release would pose no "danger to any person or the community." His medical condition—serious and deteriorating though it may be—did not deter him from committing the crimes for which he is now incarcerated. And there is no reason to believe that it will deter him from committing similar crimes in the future.

*\*\*\**

The Court, therefore, **ORDERS and ADJUDGES** as follows:

1. The Defendant's Motion for Reduction in Sentence [ECF No. 193] is **DENIED**.

2. The Defendant's Motion for Court-Appointed Medical Expert [ECF No. 201] is **DENIED AS MOOT**.

3. The Defendant's Motion for Clarification [ECF No. 205] is **DENIED AS MOOT**. The Defendant's requested changes have been made.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 14th day of April 2020.

                                                                                                                  **ROY K. ALTMAN**
                                                                                                                  **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record